MINUTE ENTRY
ROBY, M. J.
October 10, 2007

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARKETFARE ANNUNCIATION, LLC, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO:     06-07232** |
| **UNITED FIRE & CASUALTY INSURANCE CO., ET AL.** | **SECTION: "T" (4)** |

## ORDER

A **TELEPHONE CONFERENCE** was held in the above-captioned matter on October 3, 2007 at 10:00 a.m. before Magistrate Judge Karen Wells Roby.  Participating were Phillip Anthony Franco, representing the Plaintiffs and Kathryn Montez Caraway, representing the Defendants.  The purpose of the conference was to determine the need for hearing on the **Motion to Quash and for Protective Order (R. Doc. 174)** filed by the Defendants.  In opposition to the motion, the Plaintiffs had earlier filed **Plaintiffs' Opposition to United Fire's Motion to Quash and for Protective Order (R. Doc. 193)**.  However, on October 2, 2007, the Defendants submitted a facsimile to this Court, informing this Court that "[t]he parties have worked out an agreement to resolve the hearing

MJSTAR:  00:06

on the Motion for Protective Order."

The telephone conference will be discussed in further detail below.

**I.     Background**

On August 24, 2006, the Plaintiffs filed these consolidated lawsuits against their insurer and various individuals ("Defendants") who were involved in adjusting their pending insurance claim for damages sustained to their supermarket businesses from Hurricane Katrina. Unsatisfied with the Defendants' insurance payments for the damage to their businesses, the Plaintiffs filed several separate suits in state court seeking to recover for breach of the insurance contracts covering the businesses, and for breach of the statutory duties under Louisiana law. The Defendants removed these actions to this Court based on diversity jurisdiction, where the cases were eventually consolidated. This matter involves a discovery dispute arising from the case.

According to the Defendants, Scott Gaddis ("Gaddis") is a former employee of the Defendants who currently resides in Liberal, Kansas. (R. Doc. 174-2, p. 1.) The Defendants allege that the Plaintiffs attempted to subpoena Gaddis to produce documents in his possession regarding the Defendants' handling of insurance claims arising from Hurricane Katrina. (R. Doc. 174-2.) The Defendants contend that the Plaintiffs' subpoena was deficient, however, they did not provide the Court with a copy of the subpoena.

The Defendants moved to quash the subpoena based on the deficiencies. (R. Doc. 174.) They also requested the Court to enter a protective order, allowing the Defendants to first review the documents requested in the subpoena, to determine whether they were privileged or protected.

On September 12, 2007, the Plaintiffs remedied the subpoena's deficiencies. The corrected subpoena requested Gaddis to "produce and permit the inspection" of the documents in his

possession on September 17, 2007. (R. Doc. 193-2, Ex. A.) The Plaintiffs also indicated that they were willing to submit the documents first to the Court for an *in camera* review and that they had agreed to do so earlier at an Rule 37 Discovery Conference. (R. Doc. 193.) Consequently, the Plaintiff asserted that the Defendant's motion was rendered moot. (R. Doc. 193.)

On October 2, 2007, the Defendants submitted a facsimile to this Court, informing it that "[t]he parties have worked out an agreement to resolve the hearing on the Motion for Protective Order," agreeing that Gaddis will produce the disputed documents to the Court for an *in camera* inspection.

On October 3, 2007, during the telephone conference with the undersigned magistrate judge, counsel reiterated their agreement to have Gaddis submit the contested documents to the Court for *in camera* review. Counsel agreed that the Defendants would write a letter to Gaddis, copying the court and requesting that Gaddis fax the materials directly to the Court. Counsel also informed the Court that the Defendants were already in possession of the documents and had agreed to file any objections to the production of the documents within 7 days. During the conference, the parties agreed that depending on the objections, the Court would either place the issue on calendar, to be heard on October 17, 2007, or issue a written ruling on the production of the materials.

Soon thereafter, on October 4, 2007, Gaddis faxed a copy of the documents to the Court. On October 10, 2007, the Defendants also submitted a copy of the documents, which they had individually labeled and categorized into discrete exhibits. Along with the documents, the Defendants attached a **Privilege Log and Memorandum in Support of Objections to Production of Documents Subpoenaed from Former United Fire Employee, Scott Gaddis and Subject to In-Camera Inspection** ("privilege log"), describing the documents and objecting to their production

3

on the basis of relevance, attorney-client privilege, and work product protection.

## II.     Standard of Review

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). The discovery rules are accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials. *Hebert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Further, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

The attorney-client privilege shields "communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. The privilege also protects communications from the lawyer to the client, at least if they would tend to disclose the client's confidential communications." *Hodges, Grant & Kaufmann v. U.S. Gov.*, 768 F.2d 719, 720-21 (5th Cir. 1985). The burden to establish the applicability of the attorney-client privilege rests on the party invoking the privilege and must be specifically asserted. *Id.* at 721; *U.S. v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982). If, however, privilege exists, the information sought by a party can be withheld. *Baldrige v. Shapiro*, 455 U.S. 345 (1982). Applicability of the privilege "is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents." *Hodges*, 768 F.2d at 721.

The work-product doctrine is "distinct from and broader than the attorney-client privilege." *U.S. v. Nobles*, 422 U.S. 225, 238 n. 11 (1975). Rule 26(b)(3) provides that:

> a party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial  by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the subsatntial equivalent of the materials by other means.  In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney.

Similar to attorney-client privilege, the burden of demonstrating applicability of work product protections rests on the party invoking it.  *Hodges, Grant & Kaufmann v. U.S. Government, Dept. of the Treasury, I.R.S.,* 768 F.2d 719, 721 (5th Cir. 1985).

The Court must initially determine whether the documents were in fact prepared in anticipation of litigation; the mere fact that litigation eventually ensues does not, alone, protect all documents related to the subject matter of the litigation.  *Binks Mfg. Co. v. National Presto Indus. Inc*., 709 F.2d 1109 (7th Cir.1983). A document is only considered work product if it is primarily concerned with legal assistance.  *Loctite Corp. v. Fel-Pro, Inc*., 667 F.2d 577, 582 (7th Cir. 1981).

**III.    Analysis**

The contested exhibits are analyzed below.

**A.    Exhibit A**

Exhibit A consists of an email relating to the handling of litigation files in other cases by outside counsel. (Priv. L., p. 2.)  Attached to the email, is a spreadsheet itemizing the litigation files. (Priv. L., p. 2.)  The Defendants object to the production of Exhibit A on grounds of work product and attorney-client privilege.  (Priv. L., pp. 2-3.)

After reviewing Exhibit A, the Court concludes the Exhibit A contains litigation strategies,

and is thus protected under the work product doctrine. However, the spreadsheet attached to the email contains mere facts and no privileged or protected content. Therefore the attached spreadsheet must be produced to the Plaintiffs.

### B.     Exhibit B

Exhibit B consists of email correspondence exchanged among the Defendants' employees and a representative from Property Loss Consulting. (Priv. L., p. 3.) The Defendants object to the production of Exhibit B because it is irrelevant, as it does not pertain to the insurance claim at issue in this litigation. After examining its contents, the Court concludes that Exhibit B is relevant because it reveals general information regarding the Defendants' handling of insurance claims. Thus, Exhibit B must be produced to the Plaintiffs in unredacted form.

### C.     Exhibit C

Exhibit C contains a three-page email "chain" that includes various attached documents, including insurance fee schedules. (Priv. L., p. 3.) The Defendants object to the discovery of the email based on attorney-client privilege and work product protection, but they do not object to the production of the attachments. (Priv. L., p. 3.) Furthermore, the Defendants indicate that they believe that the attachments have already been produced to the Plaintiffs.

After review of Exhibit C, the Court concludes that the email contains protected information. However, the attachments are not privileged or protected, and thus must be produced to the Plaintiffs.

### D.     Exhibit D

Exhibit D is an email "chain" responding to a general inquiry regarding business income claims. (Priv. L., p. 4.) The Defendants object to the production of Exhibit D on grounds of

relevance.

After examining its contents, the Court concludes that Exhibit D is relevant to this action because the Plaintiffs seek insurance proceeds for lost income, profits, and expenses for the interruption of business operations. (R. Doc. 1-2, pp. 3, 6, 11.)  Exhibit D contains general information on business income claims and is thus pertinent to this matter. (Priv. L., p. 4.) Therefore, Exhibit D must be produced to the Plaintiffs in unredacted form.

### E. Exhibit E

Exhibit E is an email sent to the Defendants' employees by a claims receptionist. (Priv. L., p. 4, Priv. L., Ex. E.)  The email addresses the procedures applicable to a class action lawsuit pending in New Orleans for homeowners' insurance claims and the handling of supplemental claims on Hurricane Katrina files. (Priv. L., p. 4, Priv. L. Ex. E.)  The Defendants assert that Exhibit E is protected from disclosure under the work product doctrine. (Priv. L., p. 4.)  After reviewing Exhibit E, the Court concludes that Exhibit E is not protected by the work product doctrine.

The work product doctrine protects against the discovery of materials primarily concerned with legal assistance and prepared in anticipation of litigation and by the party's representative, including its attorney, insurer, or agent. Fed. R. Civ. P. 26(b)(3); *Loctite*, 667 F.2d at 582. Exhibit E consists of an email generated by a claims receptionist who proffers administrative and not legal guidance in handling various claims. Accordingly, Exhibit E is not protected by the work product doctrine and thus must be produced to the Plaintiffs in unredacted form.

### F. Exhibit F

Exhibit F is a document prepared by Gaddis on reserve adjustments on an unrelated file. (Priv. L., p. 4.) The Defendants object to the production of Exhibit F because it is irrelevant,

confidential, and proprietary, as it contains private information relating to a third party. After reviewing the document, the Court concludes that Exhibit F is irrelevant to the litigation here because it specifically pertains to an unrelated claim. Accordingly, Exhibit F need not be produced to the Plaintiffs.

### G. Exhibit G

Exhibit G consists of an email that discusses the calculation of reserves on an unrelated claim. (Priv. L., p. 5.) The Defendants objects to the discovery of Exhibit G because it is irrelevant, confidential, and proprietary. (Priv. L., p. 5.) After inspecting the email, the Court concludes that Exhibit G is irrelevant to this litigation because it pertains to an unrelated claim. Thus, Exhibit G need not be produced to the Plaintiffs.

### H. Exhibit H

Exhibit H is a memorandum written by Neal Scharmer, the Defendants' in-house counsel, to the Defendants' managers and supervisors on how to appropriately monitor litigation. (Priv. L., p. 5.) The Defendants object to the production of Exhibit H because it is protected by attorney-client and work product privilege. (Priv. L., p. 5.)

After examining the memorandum, the Court concludes that Exhibit H is not protected by attorney-client privilege or the work product doctrine because the memorandum merely provides general administrative and procedural guidance on how to organize and handle litigated claims. The memorandum does not provide legal advice in connection with a specific claim, nor does it proffer a legal opinion or theory relating to an impending case. Accordingly, Exhibit H must be produced to the Plaintiffs in unredacted form.

**I.     Exhibit I**

Exhibit I consists of a four-page email "chain" exchanged internally among the Defendants' employees in response to an inquiry about supplemental Katrina claims. (Priv. L., p. 5.) The Defendants contend that the email is irrelevant. After examining Exhibit I, the Court concludes that the emails are relevant in this action because it documents the Defendants' practices of handling a claim and an evaluation by an independent adjuster that is higher than expected. Therefore, Exhibit I must be produced to the Plaintiffs in unredacted form.

**J.     Exhibit J**

Exhibit J contains another four-page email "chain" regarding public adjusters and their role in Louisiana based on the policies of the Department of Insurance in the State of Louisiana ("Department of Insurance"). (Priv. L., p. 5.) The Defendant objects to the relevance of the email. After reviewing Exhibit J, the Court concludes that J is relevant in this action because relates to the Defendants' relations with public adjusters and insured clients based on the Department of Insurance practices. Accordingly, Exhibit J must be produced to the Plaintiffs in unredacted form.

**K.     Exhibit K**

Exhibit K consists of a document from the Louisiana Department of Insurance regarding its mediation program for residential Hurricane Katrina and Hurricane Rita claims. (Priv. L., p. 6.) The Defendants object to Exhibit K on the basis of relevancy. After reviewing the document, the Court concludes that Exhibit K is irrelevant to this litigation regarding commercial insurance because Exhibit K pertains to residential insurance claims. Accordingly, Exhibit K need not be produced to the Plaintiffs.

**L.     Exhibit L**

Exhibit L contains an email "chain" exchanged internally regarding the Hurricane Katrina mediation program. (Priv. L., p. 6.) The Defendants object that Exhibit L is protected work product and is irrelevant because it relates to residential insurance policies. After examining the emails, the Court concludes that they are irrelevant to this litigation regarding insurance proceeds under a commercial policy because they pertain to residential insurance. Accordingly, Exhibit L need not be produced to the Plaintiffs.

**M.     Exhibit M**

According to the privilege log, Exhibit M is a three-page email regarding the "weekend expectations" of the Defendants employees in staffing and adjusting Hurricane Katrina files. (Priv. L., p. 6.) The Defendants object to the relevance of Exhibit M in this matter. (Priv. L., p. 6.)

The Court does not have enough information at its disposal to render a decision on the relevance of this Exhibit to the action here. Accordingly, the Court holds Exhibit M in its possession until the Defendants provide the Court with information on whether weekend adjusting services are at issue in this litigation.

**N.     Exhibit N**

Exhibit N consists of an email and accompanying memorandum exchanged internally among the Defendants' employees regarding reserve information and business income claims. (Priv. L., pp. 6-7.) The Defendants object to the production of Exhibit N based on relevance, and because it contains confidential and proprietary information. (Priv. L., p. 7.) After examining the documents identified in Exhibit N, the Court concludes that Exhibit N is relevant to the Plaintiffs' claims for insurance proceeds on lost business income. Thus, the contents of Exhibit N must be produced to

the Plaintiffs in unredacted form.

Accordingly,

**IT IS ORDERED** the Defendant's **Motion to Quash and for Protective Order (R. Doc. 174)** is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Defendants produce **Exhibits B, D, E, H, I, J, and N** in their entire, unredacted form to the Plaintiffs, no later than **4 days** after the signing of this Order.

**IT IS FURTHER ORDERED** that the Defendants produce the spreadsheet attachment to **Exhibit A** and the attachments to **Exhibit C** to the Plaintiffs, no later than **4 days** after the signing of this Order.

**IT IS FURTHER ORDERED** that **Exhibit M** is held by the Court until the Defendants answer the inquiry of whether there is an issue in this litigation with the Defendants providing adjusting services on the weekends. The Defendants must file the answer to this inquiry to the Court by **Friday, October 19, 2007**.

**IT IS FURTHER ORDERED** that the Defendants retrieve their documents from the Court, no later than **Tuesday, October 23, 2007**.

New Orleans, Louisiana, this ___17th___ day of October, 2007

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**